646 A.2d 717

**RURAL AREA CONCERNED CITIZENS, INC., Walter D. Wiltrout and Lynn Ann Wiltrout, his wife, et al., Appellants,**

**v.**

**FAYETTE COUNTY ZONING HEARING BOARD.**

**YOUGH AREA FISHERMEN'S ASSOCIATION, INC., Appellant,**

**v.**

**FAYETTE COUNTY ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued March 2, 1994.

Decided Aug. 9, 1994.

Richard E. Bower and Michael Macko, for appellants.

Gretchen A. Mundorff, for appellee.

Before CRAIG, President Judge, and COLINS, McGINLEY, FRIEDMAN, KELLEY, and NEWMAN, JJ.

KELLEY, Judge.

Rural Area Concerned Citizens, Inc. et al., (RACC) appeals the July 29, 1993 order of the Court of Common Pleas of Fayette County (trial court) which denied RACC's motion to rule that two alternate members appointed to the Fayette County Zoning Hearing Board (ZHB) were illegally appointed[1] and affirmed the ZHB's decision to grant the special exception requested by the Intervenor herein, MSH Enterprises (MSH).[2] We affirm.

**1.** The issue of whether the two alternate members were appointed to the ZHB legally was separately addressed by the trial court in an interlocutory opinion and order dated September 14, 1992.

**2.** This appeal was consolidated for argument before this court with *Yough Area Fisherman's Association, Inc. v. Fayette County Zoning Hearing Board.* Accordingly, the disposition of this appeal will control the disposition of the appeal of *Yough Area Fisherman's Association, Inc.* at No. 2063 C.D.1993.

On appeal, RACC presents four issues for review by this court: the first issue is whether the ZHB had jurisdiction over MSH's request for a special exception; the second issue is whether the ZHB abused its discretion and committed an error of law in granting a special exception to MSH; the third issue is whether the two alternate members who voted in favor of the special exception granted to MSH were illegally appointed to the ZHB; the fourth issue is whether, if it is determined that the two alternate ZHB members were sleeping during the proceedings, the decision of the ZHB to grant MSH its request for a special exception must be set aside as being unfairly rendered.[3]

On November 1, 1990, one alternate member was appointed to the ZHB by resolution of the Board of Fayette County Commissioners (commissioners). One more alternate member was then appointed to the ZHB by resolution of the commissioners on June 6, 1991. (Reproduced Record (R.) at 1173a–74a.) Both appointments were accomplished in compliance with the provisions of the Pennsylvania Municipalities Planning Code[4] (MPC) which provide for the appointment of alternate members to zoning hearing boards.

On February 5, 1991, MSH filed a petition with the ZHB requesting a special exception to operate a limestone quarry on property leased by it in Bullskin County and zoned "A–1", agricultural rural.

3. Although RACC has not included in its statement of questions involved its arguments addressing the ZHB's jurisdiction over MSH's request, the ZHB's discretion in granting MSH's request for a special exception and the fairness of the ZHB's decision in light of RACC's allegation that the alternate board members were sleeping during the proceedings, we will nevertheless consider the issues since they were raised before the trial court and before the ZHB. We caution counsel, however, that PA.R.A.P. 2116 regarding the statement of questions involved "is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." *Reed v. Juniata–Mifflin Counties Area Vocational–Technical School*, 112 Pa.Commonwealth Ct. 529, 535 A.2d 1229 (1988), *petition for allowance of appeal denied*, 518 Pa. 652, 544 A.2d 963 (1988).

4. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11201.

It was discovered at the June 12, 1991 meeting of the ZHB that only one of the three existing ZHB members would be available to consider MSH's request for a special exception. (Original Record, Meeting of Fayette County Zoning Hearing Board, dated June 12, 1991, p. 2.) The previously appointed alternate ZHB members were then designated by the chairman of the ZHB, in accordance with the MPC, to sit with the remaining regular ZHB members to create a quorum at the meetings scheduled to consider MSH's petition. *Id.* RACC first objected to the appointment of alternate members to the ZHB at the hearing held before the ZHB on November 9, 1991. (R. at 1101a.)

The ZHB held advertised hearings on June 20 and 21, 1991, August 23, 1991, September 16 and 30, 1991, October 28, 1991, and November 9, 1991, regarding MSH's request. (R. at 50a; 183a; 296a; 456a; 632a; 754a; and 926a respectively.)

On December 31, 1991, the ZHB granted MSH's request for a special exception and permitted MSH to operate a limestone quarry on the subject property. The ZHB made the following findings of fact:

1. Under Section 400 of the Zoning Ordinance of Fayette County, a stone quarry is permitted by "Special Exception Requiring Zoning Hearing Board Approval" in an "A–1", Agricultural–Rural Zone.

2. The subject properties are adjoining parcels with a combined total acreage of (342.5) three-hundred forty two and one-half acres situated in Bullskin Township and are zoned "A–1" Agricultural–Rural.

3. [MSH] plans to conduct a quarrying operation on an approximate (105) one-hundred five acre portion of the subject properties to extract and process Loyalhanna Limestone.

4. [MSH] plans to utilize a con-current backfilling method of quarring [sic] for the removal of the limestone from the subject properties and estimates on site time approximately (20) years.

5. [MSH] plans to extract and process between (300,000) three-hundred thousand to (500,000) five-hundred thousand tons of limestone per year, based upon a (215) two-hundred fifteen day per year operating schedule.

6. [MSH] plans to have between (30) thirty to (40) forty on-site employees, working from sunrise to sunset, Monday through Friday for operation of the proposed quarry.

7. [MSH] plans to utilize the following equipment for the extraction and processing of the limestone on the subject properties:

(2) two air track drills

(4) four haulage trucks

(2) two front end loaders

(2) two track dozers

(1) one road grader

(1) one water truck

and ancillary equipment consisting of crushers, conveyors, screens and related equipment.

8. [MSH] plans to haul from the quarry site (by contractor/owner) (105) one-hundred five truck loads of limestone per day, with each truck loaded with approximately 22) twenty-two tons; Based upon a production level of (500,-000) five-hundred thousand tons per year.

9. [MSH] does *not* plan to conduct a retail sales operation on the subject properties.

10. [MSH] plans to ingress/egress the subject properties via T.R. 825 which intersects with S.R. 982 to the west of the site. T.R. 825 has a (10) ten ton load limit.

11. [MSH] plans to haul limestone from the site between the hours of sunrise to 7:00 a.m., 8:30 a.m. to 3:00 p.m., and 4:00 p.m. to sunset.

12. [MSH] plans to upgrade T.R. 825 to accommodate the hauling of the limestone from the subject properties.

13. [MSH] plans to construct and maintain all catch basins and retainage ponds based upon a (100) one-hundred year

rainfall on the subject properties as required by the Department of Environmental Resources.

14. [MSH] does *not* anticipate the water supplies, streams or other water sources on or near the subject properties being adversely affected by the proposed Quarry Operation.

15. [MSH] plans to conduct blasting activities on the subject properties (1) one or (2) two times per week, in accordance with Pennsylvania Department of Environmental Resources regulations.

16. [MSH] does *not* anticipate the sound levels generated by the proposed Quarry Operation adversely affecting the residents of the area surrounding the subject properties.

17. [MSH] plans to take precautions to control dust and other matters relative to the quarry to maintain the air quality within acceptable levels on and around the subject properties.

(Resolution 91–9, R. at 1149a–51a, emphasis in original.)

The ZHB granted approval of the special exception, subject to the following conditions:

1. [MSH]'s proposed Quarry Operation shall *not* impair any water sources or supplies of the adjoining or surrounding property owners, if affected [MSH] shall replace the water supplies with ones equal in quantity and quality.

2. [MSH] shall implement whatever precautions necessary to prevent any streams or water tables on or surrounding the subject properties from being adversely affected by the proposed Quarry Operation.

(Resolution 91–9, R. at 1151a, emphasis in original.)

RACC appealed the decision of the ZHB to the trial court, which denied RACC's appeal questioning the legality of the alternate ZHB member appointments and the granting of MSH's request for a special exception. This appeal followed.

■■■ In a zoning appeal, where the trial court has not taken additional evidence, appellate review is limited to a

determination of whether the ZHB committed an abuse of discretion or an error of law, and a reviewing court may not disturb the findings of the ZHB if the record indicates that its findings are supported by substantial evidence. *Boundary Drive Associates v. Shrewsbury Township,* 507 Pa. 481, 491 A.2d 86 (1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

RACC's first argument is that the ZHB had no jurisdiction over MSH's request for a special exception. RACC contends that the ZHB erred in finding MSH's proposed use fell under the purview of the classification which includes "sand, gravel, topsoil and other mineral extraction" found in Article IV, Section 400 of the ordinance. (R. at 17a.)

■ Whether a proposed use falls within a given categorization contained in the zoning regulations is a question of law, on which the ZHB's determination is subject to review. *Merry v. Zoning Board of Adjustment,* 406 Pa. 393, 178 A.2d 595 (1962).

■ MSH's operation was described through testimony presented before the ZHB as an operation which will include moving dirt with bulldozers to provide access to underlying limestone. (R. at 85a.) The exposed limestone will then be drilled, packed with explosives, and dynamited two to four times per week. (R. at 86a.) The limestone will then be extracted, crushed mechanically and removed from the site for sale. (R. at 88a–95a.)

Article IV, Section 400 of the ordinance provides that a special exception is required for "sand, gravel, topsoil and other mineral extraction" in an "A–1", agricultural rural, district. (R. at 17a.) Article IV, Section 201 of the ordinance defines mineral extraction, storage, and processing to be "any mining, quarrying, or processing of coal, limestone, clay, sand or gravel or other mineral resources for sale or otherwise used for commercial purposes." (R. at 9a.)

Due the clear language of Sections 400 and 201 and the record testimony describing the proposed use of the subject property, the ZHB properly classified MSH's operation under Section 400 of the ordinance. Accordingly, the ZHB had jurisdiction over MSH's request.

RACC's second argument is that the ZHB committed an abuse of discretion and an error of law in granting the special exception to MSH. RACC argues that the ZHB has not adequately considered the effect that the special exception will have on the community.

In requesting a special exception, the burden is on the applicant to show that the proposed use complies with the specific requirements set forth in the ordinance regarding the granting of a special exception. *Bray v. Zoning Board of Adjustment*, 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980). Once the applicant has produced evidence to show that a proposed use is within those specific requirements, the burden shifts to those who oppose the special exception to produce evidence in regard to the general, non-specific and non-objective requirements set forth in the ordinance that the use will produce an undue burden. *Id.* The objectors, when presenting evidence, must raise specific issues concerning the proposal's general detrimental effect on the community before the applicant is required to persuade the fact finder that the intended use would not violate the health, safety and welfare of the community. *R.C. Maxwell Co. Appeal*, 120 Pa.Commonwealth Ct. 251, 548 A.2d 1300 (1988). The objectors cannot meet their burden by merely speculating as to possible harm, but instead must show a high degree of probability that it will substantially affect the health and safety of the community. *Manor Healthcare v. Zoning Hearing Board*, 139 Pa.Commonwealth Ct. 206, 590 A.2d 65 (1991). *See also Tuckfelt v. Zoning Board of Adjustment, City of Pittsburgh*, 80 Pa.Commonwealth Ct. 496, 471 A.2d 1311 (1984).

Article VI, Section 602.4 of the ordinance governs the grant of special exceptions, and reads as follows:

The Board shall have the power to hear and decide applications for special exceptions listed under SECTION 400 of this ordinance. In considering such applications, the Board shall give due regard to the nature and condition of all adjacent uses and structures; and may impose such requirements and conditions as the Board may deem necessary for the protection of adjacent properties and the public interest, including specific limitations as to future expansion.

(a) The Board shall allow a special exception in any "R" residential, "A" Agricultural Rural or "C" Conservation District provided that the proposed use meets all of the following standards:

1. The location and size of the use, the nature and intensity of the operations involved in or conducted in connection with it, its site layout, and its relation to streets giving access to it shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection with it will not be hazardous, inconvenient, or conflict with the normal traffic on residential streets, both at the time and as the same may be expected to increase in the population of the area, taking into account convenient routes of pedestrian traffic particularly of children, relation to main traffic thoroughfares and to street intersections, and the general character and intensity of development of the area. Ingress and egress to the proposed use, circulation and movement of pedestrian and vehicular traffic, parking requirements and accessibility to the existing and proposed Township of State Road system will be reviewed.

2. The location and height of buildings, the location, nature and height of walls and fences, and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings. The proposed use will be reviewed as to its relationship to and effect upon surrounding land uses and existing environmental conditions regarding or hazards and congestion;

illumination and glare; restrictions to natural light and circulation of air.

3. The use shall not involve any activity substantially increasing the burden on any public utilities and facilities unless provision is made for any necessary adjustment. Reviews shall be made as to the adequacy and availability of utility services and facilities such as public or private ( sewage systems and storm water run-off, water, trash and garbage collection and disposal and the ability of the utility or municipality to supply such services.

4. The proposed use will be reviewed as to its application to the coordination with the planning policies of the County and the municipality and its Comprehensive Plan and plans for land use, highways, schools, parks, sewers, water distribution and population growth.

5. In accordance with sound standards of subdivision practices, where applicable.

The Zoning Hearing Board may impose whatever conditions regarding layout, circulation and performance it deems necessary to insure that any proposed development will secure substantially the objectives of this Ordinance.

Fayette County Zoning Ordinance. Article VI, Section 602.4. (R. at 43a–44a.)

■ Before this court, RACC has asserted that the road system surrounding the operation will be unduly burdened, that traffic will increase to the point where it bears a substantial relationship to the health and safety of the community, that water for which MSH has made no plans to replenish could be depleted, and that blasting and equipment on the site will create significant amounts of noise.

We note that the first requirement set forth in the ordinance, regarding a proposed use's effect on traffic, has been held to be insufficient to justify the refusal of an otherwise valid land use since an increase in the amount of traffic is expected whenever a new land use or development is to be implemented. *Manor Healthcare Corporation.* Case law in this area has held traffic concerns to be both specific, thereby

placing the burden of proof on the applicant, *Reformed Seventh Day Adventist v. Zoning Board,* 127 Pa.Commonwealth Ct. 445, 561 A.2d 1324 (1989), and general, thereby placing the burden of proof on the objectors. *Yarnall v. Allen,* 66 Pa.Commonwealth Ct. 471, 444 A.2d 1335 (1982).

MSH presented sufficient evidence before the ZHB to prove that its proposed use is within the traffic requirements set forth in the ordinance even though it was undisputed at hearings before the ZHB that the road over which MSH will haul the limestone is in an unsafe condition for such use, and thereby could make travel on that road dangerous. (R. at 138a.) Specifically, testimony presented by MSH at the hearings before the ZHB established that the road over which MSH will transport the extracted limestone will be upgraded to a safe and environmentally sound condition to withstand such use. (R. at 138a; Finding of Fact No. 12.) Therefore, the ZHB finding that MSH met its burden and proved its proposed use could properly be conducted on property zoned "A–1", agricultural rural, is supported by substantial evidence.

According to the guidelines set forth in *Bray,* requirements 2, 4 and 5 of the ordinance are general, non-specific and non-objective. Accordingly, the burden shifted to RACC to present evidence and persuade the ZHB by a high degree of probability that the use proposed by MSH does not satisfy those requirements.[5]

In support of its burden, RACC presented before the ZHB the concerns of approximately twenty residents from the area surrounding the subject property regarding the possible effects of MSH's operation. (R. at 647a–751a; 903a–1147a.)

Speculation, however, has specifically been found not to rise to the level of a high probability that the proposed use will have a substantial effect on the health and welfare of the community as is required by the law. *Manor Healthcare Corporation.*

5. Section 3 is not applicable to this case since no public utilities will be used by MSH's operation.

Since RACC has merely speculated regarding the possible harm which could result from MSH's operation, and has failed to raise specific issues concerning the proposal's general detrimental effect on the community, RACC has failed to meet its burden that granting the special exception will, by a high degree of probability, substantially affect the health and safety of the community. *R.C. Maxwell Company; Manor Healthcare Corporation.* As a result, we conclude that MSH has met its burden and that the ZHB's decision is supported by substantial evidence.

■ RACC's third argument is that the Fayette County Zoning Ordinance (ordinance) has not vested the commissioners with the power to appoint alternates to the ZHB by resolution since Article VI, Section 601 of the ordinance does not specifically provide for such appointments. The language of Section 601 reads in pertinent part:

> The Board shall consist of three members who shall be appointed by the Board of Fayette County Commissioners. The term of office shall be so fixed that the term of office of one member shall expire each year. The Board° shall promptly notify the Board of Fayette County Commissioners of any vacancies which occur and appointments to fill vacancies shall be only for the unexpired portion of the term.

Fayette County Zoning Ordinance. (R. at 42a.)

RACC contends that under Article VII, Section 702 of the ordinance, Section 601 of Article VI must first be amended to specifically permit the commissioners to appoint alternate members to the ZHB. RACC contends that until such an amendment is adopted, alternate appointments to the ZHB cannot be made legally because the provisions of the MPC, which provide for the appointment of alternate members to zoning hearing boards, are not effective in Fayette County until an amendment is made to the ordinance which adopts

those MPC provisions specifically.[6]

Article VII, Section 702, reads as follows:

Any proposal, approval, disapproval or suggestion of the Fayette County Planning Commission shall have an advisory effect only and not be binding upon the Board of County Commissioners and unless said Fayette County Planning Commission shall have transmitted its report upon the proposed amendments within (30) thirty days after the submission thereof to it, the Board of County Commissioners shall be free to proceed with the adoption of the amendment without further awaiting the receipt of the report of the Fayette County Planning Commission. Before finally adopting such Amendment, the Board of County Commissioners shall hold a public hearing thereon subject to public notice as prescribed under the Pennsylvania Municipalities Planning Code.

Fayette County Zoning Ordinance. (R. at 47a.)

In response, both the ZHB and MSH contend that the ordinance does not prohibit the appointment of alternates, and that the MPC, standing alone, vests the commissioners with the requisite power to appoint alternate members to the ZHB. The ZHB and MSH contend this power not to be contingent upon any provision of the ordinance, and conclude that sections 903(b) and 906(b) of the MPC control the procedure for the appointment of alternate members to zoning hearing boards.

Section 903(b) reads as follows:

The governing body [7] may appoint by resolution at least one but no more than three residents of the municipality to

6. The majority of the MPC sections cited by RACC are inapplicable to the case sub judice since they pertain to planning commissions and not zoning hearing boards. Nor has RACC cited any authority for why section 203(d) of the MPC, 53 Pa.S. § 10203(d), which requires that any reduction or increase in the number of members on planning commissions be accomplished by ordinance, is applicable to zoning hearing boards.

7. Section 107(a) of the amended MPC designates the Board of Commissioners in counties of the second class A through eighth classes as the

serve as alternate members of the board. The term of office of an alternate member shall be three years. When seated pursuant to the provisions of section 906, an alternate shall be entitled to participate in all proceedings and discussions of the board to the same and full extent as provided by law for board members, including specifically the right to cast a vote as a voting member during the proceedings, and shall have all the powers and duties set forth in this act and as otherwise provided by law. Alternates shall hold no other office in the municipality, including membership on the planning commission and zoning officer. Any alternate may participate in any proceeding or discussion of the board but shall not be entitled to vote as a member of the board nor be compensated pursuant to section 907 unless designated as a voting alternate member pursuant to section 906.

53 Pa.S. § 10903(b) (footnotes omitted).

Section 906(b) reads in pertinent part:

If, by reason of absence or disqualification of a member, a quorum is not reached, the chairman of the board shall designate as many alternate members of the board to sit on the board as may be needed to provide a quorum. Any alternate member of the board shall continue to serve on the board in all proceedings involving the matter or case for which the alternate was initially appointed until the board has made a final determination of the matter or case. Designation of an alternate pursuant to this section shall be made on a case-by-case basis in rotation according to declining seniority among all alternates.

53 Pa.S. § 10906(b).

▊▊▊▊ It is well settled that a municipal ordinance cannot be sustained to the extent that it is contradictory to or inconsistent with, a state statute. *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951). However, a municipal corporation with subor-

governing body for purposes of the implementation of the MPC. 53 Pa.S. § 10107.

dinate power to act in a matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are themselves not unreasonable. *Id.* The provisions of the Pennsylvania Municipalities Code take precedence over and invalidate, to the extent of their inconsistency, all local zoning enactments. *Boyd v. Zoning Hearing Board of Churchill Borough,* 83 Pa.Commonwealth Ct. 110, 476 A.2d 499 (1984).

The MPC has vested the commissioners with the power to appoint alternate members to the ZHB pursuant to the terms set forth in section 903(b). Further, the Act of 1988 amending the MPC incorporated section 906(b) into the MPC to specifically permit the inclusion of appointed alternate members on zoning hearing boards by the chairman of the ZHB to reach a quorum.

RACC has not suggested, nor is this court aware, of any statutory or case law which requires that an ordinance be amended in order for the provisions of the MPC to be in effect. Further, there is no direct conflict between the ordinance and the MPC, and RACC has set forth no suggestion that amending the ordinance will aid and further the purpose of section 903(b). *Western Pennsylvania Restaurant Association.*

We therefore agree with the trial court and conclude that the MPC vests the commissioners with the power to appoint by resolution alternate members to the ZHB without first amending the township's existing ordinance.

 RACC's fourth and final argument is that the ZHB could not have rendered a fair decision to grant MSH its request for the special exception since the two alternate ZHB members slept during the proceedings. This issue was not addressed before the ZHB.[8]

---

**8.** Where allegations of error concern actions of the trial court rather than the ZHB, this court will review those issue(s) to determine if the trial court committed an abuse of discretion or an error of law. *Amerikohl Mining v. Zoning Hearing Board,* 142 Pa.Commonwealth Ct.

In support of its argument, RACC refers to the testimony of local citizens presented before the trial court at a hearing held to address this issue on May 20, 1993. The local citizens testified that the alternate ZHB members appeared to be sleeping during some of the proceedings before the ZHB. (R. at 1205a–1345a.)

We agree with the trial court's decision to reject this argument in reliance on *Commonwealth v. Jones*, 314 Pa.Superior Ct. 497, 461 A.2d 267 (1983), which addressed the issue of alleged sleeping jurors.[9] In *Jones*, our Superior Court determined that the mere appearance of dozing may not be taken as a clear indication that an individual is asleep, and is missing relevant testimony. *Id.*

Therefore, the trial court did not abuse its discretion or commit an error of law in rejecting RACC's argument since a review of the evidence presented by RACC reveals that it is inadequate to support the conclusion that the ZHB members were actually sleeping.

Accordingly, the decision of the Court of Common Pleas of Fayette County is affirmed.

### *ORDER*

NOW, this 9th day of August, 1994, the order of the Court of Common Pleas of Fayette County, dated July 29, 1993, at No. 115 of 1992, G.D., is affirmed.

249, 597 A.2d 219 (1991), *petition for allowance of appeal denied,* 529 Pa. 652, 602 A.2d 861 (1992).

**9.** Although the Superior Court's decision in *Jones* is not controlling on this court, we may look to the decision in *Jones* for guidance. *Muntz v. Department of Transportation,* 157 Pa.Commonwealth Ct. 514, 630 A.2d 524 (1993).