Edward J. MEHRING and Betty
Mehring, Appellants,

v.

ZONING HEARING BOARD OF MAN-
CHESTER TOWNSHIP and Ron D.
Ensminger and Joan C. Ensminger.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Nov. 16, 2000.

Glenn C. Vaughn, York, for appellants.

Peter D. Solymos, York, for appelles.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Edward J. and Betty Mehring appeal from the order of the Court of Common Pleas of York County that affirmed the decision of the Manchester Township Zoning Hearing Board (Board) granting Joan C. Ensminger (Ensminger) a special exception to permit her to provide child daycare services at her residence. We affirm.

Ensminger and her husband are the owners of a one and one-half story single-family home with a basement located at 106 Rockwood Avenue in Manchester Township (Township), York County within the RM–Medium Density Residential zoning district. Ensminger has provided child daycare services for four to six children at her residence for fourteen years. Section 1219.A of the Manchester Township Zoning Ordinance (Ordinance) adopted on January 23, 1996 permits "a child care home" by a special exception in a detached, semi-detached or attached single or two-family dwelling in all residential zoning districts. The Ordinance defines a "child care home"

as "[a] State licensed and/or registered facility in which child care is provided at any time for not more than six (6) children under the age of twelve (12), . . . ." Section 104.B. Ensminger has been issued a certificate of registration by the Department of Public Welfare authorizing her to operate a child daycare home for up to six children.

In March 1999, the Mehrings, the adjacent property owners who have recently retired, complained about the noise of the barking dog and the children playing in Ensminger's yard to the Township. The Township zoning officer thereafter informed Ensminger that she must obtain a special exception to continue to provide child daycare services. Ensminger then filed an application for a special exception with the Board, proposing to provide child daycare services at her residence for four to six children with ages ranging from sixteen months to third-grade ages from 6:30 a.m. to 5:30 p.m., Monday through Friday. After a hearing at which Ensminger, the Mehrings and other neighbors testified, the Board granted Ensminger's application by a 2–to–I vote. On appeal, the trial court affirmed the Board's decision. The Mehrings' appeal to this Court followed.[1]

It is well established that a use permitted by a special exception is a use which the municipal legislative body has determined to be appropriate in the zoning district, if specific standards set forth in the zoning ordinance are met. *City of* *Pittsburgh v. Herman,* 7 Pa.Cmwlth. 243, 298 A.2d 624 (1973). To establish entitlement to a special exception, therefore, the applicant must initially prove that the proposed use complies with the specific, objective criteria set forth in the zoning ordinance. *Bray v. Zoning Board of Adjustment,* 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980).[2]

The Mehrings first contend that Ensminger failed to comply with Section 1219.C of the Ordinance requiring "[a]t least one (1) off-street parking space for each person employed, plus two (2) off-street parking spaces in addition to the off-street parking requirements for the residential use" for a childcare home.

At the hearing, Ensminger proposed to provide four off-street parking spaces: two on the driveway which is 12 feet wide and 75 feet long, and two in the backyard for the family cars. Ensminger testified that she does not hire any employee in providing the daycare services, that she does not drive, and that her husband and daughter are the only licensed drivers in her family. Because Ensminger does not have any employee, she was required to provide only four off-street parking spaces under the clear language in Section 1219.C, i.e., two parking spaces for the proposed use and two parking spaces for the dwelling unit as required by Section 1501 .A. Moreover, under the off-street parking requirement for home occupations set forth in Section 1229.D.4.a which is also applicable to a child care home, Ensminger is only re-

---

1. This Court's scope of review in zoning cases, where, as here, the trial court did not take any additional evidence, is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia,* 682 A.2d 856 (Pa. Cmwlth.1996). The Board abuses its discretion, only if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

2. The Mehrings request that the Ensmingers' three-page statement contained in the certified record be stricken. The Ensmingers submitted the statement on June 27, 1999, five days after the Mehrings appealed the Board's June 2, 1999 decision to the trial court. In the statement, the Ensmingers summarized their position on the question of compliance with the specific criteria required for granting a special exception. It also contains, however, some evidentiary matters which were not presented at the hearing and was never considered by the Board. The Ensmingers do not contest the Mehrings' request. Accordingly, the Ensmingers' statement is stricken from the record.

quired to provide a minimum of two parking spaces in the rear yard, in addition to two parking spaces required for a dwelling unit.[3] Therefore, the four parking spaces proposed by Ensminger also comply with the off-street parking requirement for a home occupation.

■ The Mehrings insist, however, that Ensminger should provide more than four off-street parking spaces because she may hire an employee in the future or sell the property to someone who will hire an employee. In deciding Ensminger's entitlement to use her property for the daycare services, the only relevant consideration is whether the current use, as proposed, complies with the zoning requirements, not the possibility of her future zoning violations. Although Section 1229.D.4.b authorizes the Board to "require additional parking if circumstances so warrant," the Board in this matter determined that the proposed four parking spaces are adequate for the childcare home. Moreover, "[t]he granting of a special exception for a home occupation is personal to the applicant and cannot be utilized or transferred to any other person without a separate request to the Zoning Hearing Board." Section 1229.C. Hence, the application for a special exception may not be denied based on the mere possibility of sale of the subject property in the future.

■ The Mehrings also raise the question of the adequacy of the area and size of the parking spaces proposed by Ensminger. Section 1500.B of the Ordinance provides in relevant part:

> Each parking space shall consist of not less than an average of three hundred (300) square feet of useable area, for each motor vehicle, including interior driveways. Notwithstanding the above,

all parking spaces shall be ample in sizes for the vehicles for which use is intended. The net parking space per vehicle shall not be less than ten [feet] (10') wide and eighteen feet (18') long.

The driveway on the subject property is 12 feet wide and 75 feet wide and can easily accommodate two parking spaces complying with Section 1500.B. As to the two proposed parking spaces in the backyard, the Mehrings argue that each of those parking spaces would be 12 feet long in violation of Section 1500.B requiring 18 feet. In support, they rely on Ensminger's statement on cross-examination. When asked about the size of the proposed parking spaces in the backyard, Ensminger stated: "Well, I figured out the parking space at a mall is approximately 10 feet by 12 feet, so that's how big I made mine." N.T., p. 43. Ensminger's statement only indicates, however, that she was estimating the size of the parking spaces required to be placed in the backyard. Ensminger's lot is 50 feet wide and 125 feet long. The backyard is large enough to accommodate two parking spaces, which are "ample in size" and at least 18 feet in length.

■ The Mehrings next contend that Ensminger failed to comply with the maximum allowable floor area. Section 1229.D.5, which is also applicable to a childcare home, provides that "[t]he allowable area used for a home occupation shall not exceed twenty-five percent (25%) of the total floor space of all floors and in no case shall exceed fifty percent (50%) of the floor area of one floor." [4]

Ensminger testified that neither the second floor nor the basement of her residence is used by the children under her care. There are a bedroom, a living room, a kitchen, a bathroom, a bedroom and a

---

3. Section 1219.D provides that "child care homes shall also meet the provisions of Section 1229, Home Occupations, Sections C, D and E."

4. Under the Ordinance, "home occupations" are limited to "physician, dentist, barber,

beautician, clergyman, lawyer, engineer, surveyor, accountant, architect, teacher, computer programmer, artist, photographer, licensed insurance or real estate agent, seamstress or similar service occupations and professions." Section 1229.B.

backroom or playroom on the first floor. The living room is the largest room on the first floor. Ensminger testified that the children primarily use the backroom or playroom; they use the kitchen only for meals and crafts; she brings them to the living room only when she must watch them while preparing meals in the kitchen; and she takes them to the yard for exercise for one-half hour in the morning and one hour in the afternoon. Ensminger estimated the total area used for the daycare services to be 10 to 11% of the total floor space of the house, which is the figure that she had used for tax purposes. She could not estimate, however, what percentage of the total first floor area is used for the daycare services.

The Mehrings assert that Ensminger did not meet the maximum allowable area under Section 1229.D.5 due to her failure to state the percentage of the total first floor area used for her operation. The Mehrings, however, do not dispute that the backroom or playroom primarily used by the children is less than 50% of the total first floor area. Moreover, as testified by Ensminger, the children are occasionally required to be in the different area of the first floor during the course of her care. For example, they have to eat in the kitchen, use the bathroom and play in the living room while she prepares meals in the kitchen. Due to the unique nature of the services of caring for the children, not present in other home occupations, the children's occasional use of the different area of the first floor should not be considered in determining Ensminger's compliance with Section 1229.D.5. Strict interpretation of Section 1229.D.5 to include such occasional use in determining the compliance with the maximum allowable area, as urged by the Mehrings in this matter, would effectively prevent operation of the childcare home specifically permitted in all residential zoning districts under the Ordinance.

■ The Mehrings next contend that Ensminger teaches alphabet, finger-plays,

weather, days of the week and how to count numbers to up to six children under her care in violation of Section 1229.D.1 of the Ordinance, which provides that "[n]o more than three (3) pupils may receive instruction at any one time." The primary function of the use proposed by Ensminger is, however, to provide child daycare services. She is not seeking to provide "instructions" to "pupils" as a teacher, one of the home occupations enumerated in Section 1229.B. We conclude, therefore, that Section 1229.D.1 is inapplicable to the childcare home proposed in this matter.

Finally, the Mehrings contend that the record established that the proposed use would be detrimental to the public interests.

■ Where, as here, the proposed use complies with all the specific standards required for granting a special exception, it is presumed that such use is not adverse to the public health, safety and welfare. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). To rebut that presumption, the objectors must establish a high degree of probability that the proposed use will adversely impact on the public interests in a way not normally expected for the type of the proposed use. *Ruddy v. Lower Southampton Township Zoning Hearing Board*, 669 A.2d 1051 (Pa.Cmwlth.1995), *appeal denied*, 546 Pa. 651, 683 A.2d 887 (1996). The mere speculation of possible harms resulting from the proposed use fails to satisfy the objectors' burden. *Rural Area Concerned Citizens, Inc. v. Fayette County Zoning Hearing Board*, 166 Pa.Cmwlth. 520, 646 A.2d 717 (1994), *appeal denied*, 540 Pa. 636, 658 A.2d 798 (1995).

■ In opposition to the proposed use, the Mehrings testified regarding the noise of the barking dog and the children playing in Ensminger's yard. The Mehrings also expressed their concern over possible diminution of their property value. Edward J. Mehring stated: "We believe that

the value of our property would drop because the house is too small for today's size family, and a retired person would not buy it due to the noise." N.T., p. 70.

Other neighbors, however, contradicted the Mehrings' testimony. One neighbor testified that the Ensmingers' dog is kept inside the house and no longer barks when the children play outside. Another neighbor, a retiree, testified that the noise "is no worse than when [his] children growing up" and that he did not have any problem with the proposed use. N.T., p. 77. Finally, a neighbor, who lives directly across from the Ensmingers' house, testified that the Ensmingers' "dog is not a constant yapper" and that "[i]t has not been a noise problem for other people surrounding this property...." Id. at 78–79. The Ensmingers argue that the Mehrings' "complaints would likely be the same if [they] had four (4) to six (6) children of their own on site." The Ensmingers' Brief, p. 17

■ In permitting a childcare home by a special exception in a detached, semi-detached or attached single or two-family dwelling in all residential zoning district, the legislative body of the Township determined that such use is appropriate if the specific standards are met. The Mehrings' complaints of the noise and their concern over possible diminished value of their property alone are insufficient to establish a high degree of adverse impact on the public interests, beyond that normally expected for a childcare home. Moreover, "[t]he equitable question of nuisance abatement should not cloud the issue of the legality of [the] use for zoning purposes ." *Sanko v. Rapho Township*, 6 Pa. Cmwlth. 73, 293 A.2d 141, 143 (1972).

Since the record establishes Ensminger's compliance with the specific and general standards for granting a special exception for the proposed childcare home, the order of the trial court is affirmed.

### ORDER

AND NOW, this 16th day of November, 2000, the order of the Court of Common Pleas of York County in the above-captioned matter is affirmed. The three-page statement of Ron D. and Joan C. Ensminger dated June 27, 1999 is stricken from the record.