IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greg and Deborah Loch,         :
         Appellants      :
                       :
       v.              :  No. 318 C.D. 2020
                       :  SUBMITTED:  March 15, 2021
Zoning Hearing Board of Moore  :
Township, Stephen Micio and Simona:
Micio                    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED:  April 13, 2021

Greg and Deborah Loch (collectively, Neighbors) appeal from the March 11, 2020 order of the Court of Common Pleas of Northampton County (trial court), which affirmed the July 15, 2016 decision of the Moore Township (Township) Zoning Hearing Board (ZHB), which granted the appeal of Stephen and Simona Micio (collectively, Landowners).  Landowners had appealed a Notice of Violation and Cease and Desist Order (Enforcement Notice) issued by the Township Zoning Officer, Jason Harhart (Zoning Officer), who cited them for maintaining a second residence on their property (the Property) in violation of the Township Zoning Ordinance (Ordinance).  The issues before this Court are whether Landowners' appeal to the ZHB was timely and whether the ZHB erred in finding that Landowners had a vested right to maintain the second residence on the Property.

## I.  Background

The Property, which Landowners purchased on March 26, 1969, consists of 11.24 acres located within the Township's Limited Conservation Zone and has

several structures, including the main residence and a barn. Original Record (O.R.), Item No. 13, Notes of Testimony (N.T.), 6/1/16, Ex. Nos. A-1, A-7. Landowners operate a taxidermy business from the first floor of the barn and reside on the barn's second floor. Landowners rent the main residence to a tenant, who operates a pig farm on a separate portion of the Property.[1] N.T., 6/1/16, at 11.

The Zoning Officer initiated an investigation of possible Ordinance violations related to the Property following a complaint by Gregory Loch (Loch) about odors emanating from the pig farm. *Id.*, Ex. No. T-1. Loch's complaint also asserted that Landowners maintained two residences on the Property. *Id.* The Zoning Officer's investigation revealed that the barn's second floor contained a full bathroom, kitchen, bedroom, living room, and storage closets. Ex. No. T-5.

Landowners subsequently received a Notice of Violation and Cease and Desist Order (Enforcement Notice) on March 21, 2016, which advised Landowners that their use of the barn as a second single-family residence violated several sections of the Ordinance, including Section 200-26A of the Ordinance,[2] which restricts a lot to no more than one principal use, unless otherwise permitted in the Ordinance. N.T., 6/1/16, at 26; Ex. No. T-7. The Enforcement Notice further advised Landowners that they had 30 days to appeal the Zoning Officer's determination to the ZHB. *Id.*

Stephen Micio (Micio) spoke to the Zoning Officer in person on March 27, 2016, and provided him a handwritten note, which indicated that Landowners

___

[1] There is no dispute that the taxidermy business constitutes a nonconforming use that predates the Ordinance, and the pig farm is permitted as an accessory use to the main residence.

[2] Moore Township Zoning Ordinance, § 200-26A. The additional violations cited in the Enforcement Notice all relate to Landowners' use of the barn as a second residence and allege Landowners failed to obtain the necessary building and occupancy permits, and code inspections required to convert the barn into a residence. N.T., 6/1/16, at 26; Ex. No. T-7.

2

wished to appeal the Enforcement Notice to the ZHB. N.T., 6/1/16, at 27. Landowners filed a subsequent Notice of Appeal, utilizing a boilerplate form provided by the Township, and paid the required hearing fee, on May 11, 2016. O.R., Item No. 6(1), Notice of Appeal. Landowners sought relief from the Enforcement Notice on the basis that the barn was used as a residence prior to the adoption of the Ordinance. *Id.* Accordingly, it qualified as a lawful preexisting, nonconforming use. *Id.* Landowners further argued they had a vested right in maintaining the barn residence, as significant funds were expended in renovating the barn for that purpose. *Id.* The ZHB conducted a hearing on the Enforcement Notice on June 1, 2016.

The Zoning Officer confirmed that Micio presented him with a handwritten appeal on March 27, 2016. N.T., 6/1/16, at 26. He agreed that the Notice of Appeal form was not filed until May 11, 2016. *Id.* The Zoning Officer did not object to Landowners filing the Notice of Appeal form on a later date, as the deadline for raising the issue at the next ZHB meeting had already passed. *Id.* at 27.

With regard to the evidence supporting the Enforcement Notice, the Zoning Officer testified that he was unable to locate any permits in the Township's files which authorized a second residence on the Property. *Id.* at 25. He advised that the Northampton County (County) Assessment Office, which receives copies of all permits issued by the Township, likewise could not find any evidence demonstrating that a second residence was approved by the Township. *Id.* at 34-35. Moreover, a County-wide assessment performed in 1995 indicated that the Property only contained one residential unit. *Id.* at 38. The Zoning Officer acknowledged, however, that the accuracy of records kept by the County Assessment Office is largely dependent upon the efficiency of each township in providing copies of the

3

requisite records. *Id.* at 35. He also related that, between 1999 and 2001, the Township began organizing its property records into "parcel identification folders." *Id.* at 31-32. While some folders did contain records from the 1970s and 1980s, the Zoning Officer could not say whether all folders maintained by the Township were complete. *Id.* at 32.

Micio testified that, when he purchased the Property in 1969, the barn was already hooked up to a septic system and supplied with water and electricity. *Id.* at 43. The barn also had a small kitchen area where Micio occasionally ate his meals and which came equipped with a refrigerator and freezer. *Id.* at 53-54, 57.

As Micio worked long hours during hunting season, he initially slept on a cot in the barn, which he heated with a coal stove. *Id.* at 53-54. He obtained a permit to remodel the barn when he retired from teaching in 1980, with the intent of becoming a full-time taxidermist. *Id.* at 51. Most of the remodeling was done between 1979 and 1981, but Micio did some work when he first purchased the Property. *Id.* at 51-52.

With the understanding that he had permits from the Township to do so, Micio updated the plumbing and electric wiring in the barn, installed windows and doors throughout, and expanded the kitchen area to include a stove and sink. *Id.* at 56-57. Micio improved the second floor of the barn by adding a second bathroom and storage closets, and he closed in the bedroom to make it more private. *Id.* at 57, 61-63. The coal stove was replaced with a gas stove and chimney which extended to the second floor. *Id.* at 56. Micio began residing in the barn full time in the late 1980s after he and his wife separated. *Id.* at 59.

Micio made additional improvements to the barn in 1998, as he had remarried and wanted to make the barn "a little bit nicer for [his wife.]" *Id.* at 69. Micio

4

testified he spent approximately $100,000 over the years remodeling the barn. Although Micio was not able to find a copy of the 1979 permits he relied on to perform the work, he presented a cancelled check dated April 17, 1979, which was made payable to the Township and cashed by the Township Board of Supervisors on May 10, 1979. *Id.* at 66, Ex. No. A-24. A notation in the memo section of the check indicates the $40 payment related to "Building Permit #1068," and "Zoning Permit #1068." *Id.*

In April 2016, the County reassessed the barn and taxed it as a residence. N.T., 6/1/16, at 72. Micio testified that, prior to that time, the barn was taxed as a business. *Id.* After the 2016 reassessment, the barn was taxed as both "a business and as a residence." *Id.*

Gregory Loch attended the June 1, 2016 ZHB meeting with his counsel. He did not testify or present any evidence, nor did he respond when the ZHB opened the floor for public comment. *Id.* at 99. The ZHB denied Landowners' request to have the barn residence declared a nonconforming use. *Id.* at 100. The ZHB concluded, however, that Landowners were entitled to relief as they had established a vested right to maintain the second residence. *Id.* at 102.

The ZHB expanded upon its June 1, 2016 decision in a written opinion issued on July 15, 2016. O.R., Item No. 6(3), ZHB Decision. The ZHB found that four separate uses exist on the Property: a single-family dwelling, a residence in the barn, a pig farm, and a taxidermy business. *Id.*, Finding of Fact (F.F.) No. 13. Since it first went into effect on April 22, 1973, the Ordinance has prohibited a landowner from maintaining two principal uses on the same lot. *Id.*, F.F. Nos. 14-15. As the taxidermy business was commenced prior to the adoption of the Ordinance, it constituted a lawful preexisting nonconforming use. *Id.*, F.F. No 16. The pig farm

was also permitted as a use because the Property is located within the Limited Conservation Zone. *Id.*, F.F. No. 17. The Zoning Officer did not know whether the Township's zoning files contained all permits issued by the Township since the Ordinance was adopted in 1973. *Id.*, F.F. No 18. While the County Assessment Office maintained copies of records which reflected any improvements made on properties within the County, the County relied on individual municipalities to supply records. *Id.*, F.F. No. 19. Accordingly, if a municipality failed to forward a copy of a building permit, any construction resulting from that permit would not be reflected in the County Assessment Office's records. *Id.*

The ZHB recognized that Micio frequently slept in the barn during hunting season. ZHB Decision at 9. It did not find this evidence sufficient to establish the barn's use for residential purposes prior to the enactment of the Ordinance in 1973, however. *Id.* Therefore, Landowners were not entitled to relief from the Enforcement Notice on the basis that the barn residence was a lawful preexisting nonconforming use. *Id.*

As to whether Landowners established a vested right in the permits allegedly issued by the Township in 1979, the ZHB noted that such relief is based on a landowner's good faith reliance on government action, which resulted in the expenditure of substantial unrecoverable funds. *Id.* Although neither the Township nor Landowners were able to produce the 1979 permits, Micio's testimony that he acquired the permits was corroborated by the cancelled check he produced at the June 1, 2016 hearing. *Id.* at 10. Thus, the ZHB concluded, Micio had no reason to believe the permits were not issued. *Id.* Micio justifiably relied on the issuance of the permits and proceeded to expend funds converting the second floor of the barn into a residence for his full-time use in the 1980s. *Id.* at 11. The ZHB reasoned that

6

enforcing the Ordinance provision prohibiting two principal uses on the same lot would cause Landowners extreme hardship. *Id.* As Landowners presented sufficient evidence to establish a vested right in the 1979 permits, Landowners were entitled to relief from the Enforcement Notice. *Id.*

Neighbors appealed to the trial court, arguing that the ZHB abused its discretion in hearing Landowners' appeal, as it was untimely filed on May 11, 2016. In response, the Township and Landowners asserted that Neighbors failed to raise the timeliness of Landowners' appeal at the ZHB hearing and the issue was consequently waived. Neighbors also challenged the ZHB's determination that Landowners had acquired a vested right to maintain a second residence in the barn. Because the trial court took no additional evidence, it was bound by the ZHB's credibility determinations and its resolution of conflicting testimony. O.R., Item No. 14, Trial ct. op. at 5.

The trial court rejected Neighbors' argument regarding timeliness of Landowners' appeal. *Id.* at 7. While Micio's handwritten appeal was not introduced at the June 1, 2016 ZHB hearing, the trial court recognized that the Zoning Officer's receipt and acknowledgment of that appeal was made part of the record through the Zoning Officer's credited testimony. *Id.* at 6-7. The Zoning Officer acknowledged that Micio presented him with a handwritten letter on March 27, 2016, setting forth Landowners' intention to appeal the Enforcement Notice. *Id.* at 6. Landowners' subsequent completion and filing of the Township's Notice of Appeal form more than 30 days after March 21, 2016, did not diminish the fact that written notice of Landowners' intent to appeal was given on March 27, 2016, well within the 30-day appeal period. *Id.* at 7. The trial court further agreed with the Township and

Landowners that Neighbors did not challenge the timeliness of Landowners' appeal with the ZHB. *Id.* at 8. Accordingly, the trial court deemed the issue waived. *Id.*

The trial court likewise dismissed Neighbors' argument that the ZHB erred in concluding Landowners had a vested right in maintaining a second residence in the barn. The trial court's conclusion was based in large part on the ZHB's credibility determinations and the absence of evidence, which contradicted Micio's testimony, which the ZHB credited. *Id.* at 17. Citing our Supreme Court's holding in *Petrosky v. Zoning Hearing Board of Township of Upper Chichester*, 402 A.2d 1385, 1390 (Pa. 2003), the trial court noted the following factors to be weighed in determining whether a landowner has a vested right to a land use acquired by virtue of an erroneously or unlawfully issued building permit: (1) the landowner's due diligence in attempting to comply with the law; (2) the landowner's good faith throughout the proceedings; (3) the landowner's expenditure of substantial, unrecoverable sums; (4) expiration of the time period during which issuance of the permit could be appealed; and (5) a lack of evidence demonstrating that individual property rights or the public health, safety, or welfare would be adversely affected by the use of the permit. Trial Ct. op. at 10-11.

As to the first and second factors, Landowners' due diligence in complying with the law and their good faith throughout the proceedings, the trial court pointed out that the ZHB credited Micio's testimony that he obtained the relevant permits. *Id.* at 15. Micio's testimony was corroborated by the cancelled check cashed by the Township Board of Supervisors in May 1979. *Id.* The trial court found no basis for believing that Micio falsified the handwritten notation on the check, which indicated it was tendered to pay for "Building Permit #1068" and "Zoning Permit #1068." *Id.*

8

Thus, the evidence supported a finding that the Township had, in fact, issued the permits in 1979. *Id.* at 15-16.

With regard to the third *Petrosky* factor, the trial court found no fault with the ZHB's finding that Landowners expended significant, unrecoverable funds improving the barn. *Id.* at 16. As most of the barn renovations took place in 1979 and the few years that followed, the trial court reasoned that the expenditures and renovations were made in reliance on the 1979 permits. *Id.* at 18. The fourth factor, expiration of the appeal period during which the 1979 permits could have been challenged, was clearly met. *Id.* at 16.

Finally, as to the fifth factor outlined in *Petrosky*, the trial court noted the lack of evidence suggesting Landowners' continued use of the barn as a second residence would adversely affect the "health, safety, or welfare of the surrounding area." *Id*. The only evidence presented to substantiate such a claim came from Loch's original complaint to the Zoning Officer, which alleged that Loch's wife suffered from "documented health issues with respiratory issues." *Id.*, Ex. No. T-2. Although Loch attended the June 1, 2016 ZHB meeting, he did not testify or otherwise present evidence to support his complaint. Trial Ct. op. at 17.

The trial court concluded that the ZHB's decision to grant Landowners relief from the Enforcement Notice was based on substantial evidence, and the ZHB did not commit any error of law or abuse of discretion. This appeal followed.[3]

---

[3] Where the trial court does not take additional evidence, we are limited to determining whether the ZHB committed an error of law or manifestly abused its discretion. *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 185 n.4 (Pa. Cmwlth. 2007). An abuse of discretion occurs when the findings are not supported by substantial evidence in the record. *Mehring v. Zoning Hearing Bd. of Manchester Twp.*, 762 A.2d 1137, 1139 n. 1 (Pa. Cmwlth. 2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

## II. Issues

On appeal, Neighbors argue that Landowners' appeal to the ZHB was untimely, and, as a result, the trial court erred in determining that the ZHB had subject matter jurisdiction to hear the appeal. Neighbors also argue that the ZHB erred and abused its discretion in determining that Landowners acquired a vested right to maintain a second residence in the barn located on the Property.

## III. Analysis

At the outset, we note that Section 1005-A of the Pennsylvania Municipalities Planning Code (MPC)[4] provides that a party appealing a land use decision may move for the presentation of additional evidence before the court of common pleas when necessary for "proper consideration of the land use appeal." Thereafter, the court may "hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence." *Id.* Instantly, Neighbors did not move for the presentation of additional evidence. Had they done so, the trial court would have heard the matter *de novo* and made its own findings of fact. *DeCray v. Zoning Hearing Bd. of Upper Saucon Twp.*, 599 A.2d 286, 287 (Pa. Cmwlth. 1991) (where trial court receives additional evidence, it decides the case *de novo*, and must set forth appropriate findings of fact to allow for proper appellate review of its decision). As the trial court here did not take additional evidence, it was limited to reviewing the ZHB's decision under the error of law or abuse of discretion standard. *Petition of Dolington Land Grp.*, 839 A.2d 1021, 1026 (Pa. 2003).

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1998, P.L. 1329, 53 P.S. § 11005-A.

**A. Timeliness**

First, we address whether Landowners failed to timely file their appeal of the Enforcement Notice. Neighbors maintain that the ZHB did not have jurisdiction to hear Landowners' appeal, as it was not filed until May 11, 2016, nearly 60 days after they received the Enforcement Notice, and well beyond the permissible appeal period. Moreover, Neighbors argue, the trial court erred in concluding that Neighbors' challenge to the timeliness of Landowners' appeal was waived because they failed to raise the timeliness issue before the ZHB.

Pursuant to Section 909.1(a)(3)[5] of the MPC, the ZHB has exclusive jurisdiction to hear an appeal from a determination made by the Zoning Officer. Section 913.3 of the MPC provides that such an appeal may be filed "in writing by the landowner affected." 53 P.S. § 10913.3. The MPC does not direct a specific format for such an appeal beyond the requirement that it be "in writing."

Statutory appeal periods are mandatory and may not be extended as a matter of grace or mere indulgence. *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594, 598 (Pa. Cmwlth. 2003) (quoting *Bass v. Commonwealth*, 401 A.2d 1133, 1134 (Pa. 1979)). An appeal filed outside this statutory period is untimely, depriving a reviewing tribunal of subject matter jurisdiction. *Id.*

While Neighbors are correct that the timeliness of an appeal goes to jurisdiction, without which the ZHB had no authority to hear Landowners' appeal, we cannot agree that their appeal from the Enforcement Notice was untimely filed.

While a copy of Micio's March 27, 2016 handwritten appeal was not introduced at the June 1, 2016 ZHB hearing, the Zoning Officer credibly testified that Micio gave him a handwritten notice of appeal on March 27, 2016. Neighbors

---

[5] Added by the Act of December 21, 1998, P.L. 1329, 53 P.S. § 10909.1(a)(3).

presented no evidence to contravene this testimony. Moreover, they have not argued that the Zoning Officer lacked authority to accept Landowners' appeal, nor have they cited any legal authority that would render Landowners' March 27, 2016 appeal untimely due to their delay in paying the hearing fee or their failure to use the boilerplate Township form.[6] Instead, Neighbors simply omit any reference to the March 27, 2016 appeal in their principal brief and maintain that Landowners' appeal was first filed on May 11, 2016. Neighbors' failure to acknowledge the March 27, 2016 appeal does not wink it out of existence. The fact that Landowners did not file their appeal on the boilerplate Notice of Appeal form provided by the Township, or pay the applicable hearing fee, until May 11, 2016, is not relevant, as their appeal had already been filed on March 27, 2016, well within the 30-day appeal period.

### B. Vested Rights

Next, we address whether the ZHB erred in concluding that Landowners have acquired a vested right in maintaining a second residence in the barn.

In affirming the ZHB, the trial court reviewed the following factors outlined in *Petrosky*: (1) Landowners' due diligence in attempting to comply with the law; (2) their good faith throughout the proceedings; (3) their expenditure of substantial, unrecoverable sums; (4) the expiration of the time period during which issuance of the 1979 permits could have been appealed; and (5) a lack of evidence demonstrating that individual property rights or the public health, safety, or welfare would be adversely affected by the use of the permits. *Petrosky*, 402 A.2d at 1390. Under *Petrosky*, if Landowners have satisfied these requirements, they have acquired a vested right to "continue to use their property in accordance with said permits." *Id.* We will address these issues in turn.

---

[6] Neither the reproduced record filed by Neighbors nor the record from the trial court contains a copy of the Ordinance.

12

Neighbors argue that Landowners have not satisfied the first *Petrosky* factor by demonstrating they exercised due diligence in complying with the Ordinance, citing both Landowners' and the Township's failure to locate copies of any permits issued in 1979. Curiously, Neighbors contend that Landowners failed to present a cancelled check to support their contention that the Township issued a permit for the barn renovations.

We find no merit in this argument, as it goes against the credited testimony of Micio that he applied for a permit in 1979, as well as the check cashed by the Township Board of Supervisors, which the ZHB considered sufficient to establish that the Township issued permits in 1979 allowing the barn renovations to proceed. This Court may not substitute its interpretation of the evidence for that of the ZHB, as the ZHB is the sole judge of witness credibility and the weight afforded to the testimony presented. *Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010). We will not overturn those determinations on appeal.

As to the second factor in *Petrosky*, Neighbors suggest that Micio failed to exhibit good faith throughout the proceedings, as he never informed the Township that he occasionally slept in the barn, nor did Landowners notify the Township when they began maintaining that space as a second residence. Neighbors also contend that Landowners' failure to obtain a certificate of occupancy for the barn residence or to pay taxes for that residence demonstrates a lack of good faith.

It is unclear how Micio's failure to notify the Township that he slept in the barn occasionally, or that he had started to reside in the barn, demonstrates a lack of good faith, given that Micio operated on the belief that such a use had been authorized by the Township in 1979. Further, there is no evidence to suggest that

13

Landowners were aware they needed a certificate of occupancy for the barn but avoided obtaining one, or that Landowners had intentionally avoided the payment of additional tax assessments. Micio testified, in fact, that he did pay business taxes for the taxidermy business operated on the first floor of the barn. Neighbors' allegations of bad faith are speculative, at best, and not based on any facts appearing in the record.

As to the third factor in *Petrosky*, there is no dispute that Landowners expended substantial, unrecoverable sums in renovating the barn. With regard to the fourth factor, any period during which an appeal could have been lodged against the issuance of the 1979 permits has long since passed.

Finally, Neighbors maintain that sufficient evidence was presented at the ZHB hearing that continued use of the barn as a second residence adversely affected the health, safety, and welfare of the public. They contend that the pig farm would not exist, but for Landowners' ability to rent out the main residence to the tenant who operates it.

There is simply no evidence to support these contentions. The pig farm, which appears to be the source of Neighbors' discomfort, is a permitted use of the Property, and nothing in the record suggests that its operation is solely dependent on the existence of a second residence on the Property. Moreover, as the trial court duly noted, Loch appeared at the June 1, 2016 ZHB hearing but failed to offer any comments or any questions after the ZHB opened the floor to the public. The sole source of evidence supporting Neighbors' assertion that Debra Loch suffers from "documented respiratory issues" is the Zoning Officer's report which he dictated from Neighbors' initial complaint. As such, it hardly constitutes substantial

evidence to support a finding that the barn residence negatively affects the health, safety, and welfare of the public.

Accordingly, we discern no error in the ZHB's determination that Landowners have a vested right in maintaining the second residence on the Property, and we affirm the trial court.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Greg and Deborah Loch,<br>　　　　　Appellants | : | |
| | : | |
| | : | |
| v. | : | No. 318 C.D. 2020 |
| | : | |
| Zoning Hearing Board of Moore | : | |
| Township, Stephen Micio and Simona | : | |
| Micio | : | |

# **O R D E R**

AND NOW, this 13th day of April, 2021, the March 11, 2020 order of the Court of Common Pleas of Northampton County is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge