**Willard R. STRUNK and Kathleen Strunk, Appellants,**

v.

**The ZONING HEARING BOARD OF UPPER MILFORD TOWNSHIP and Upper Milford Township.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1996.
Decided Nov. 4, 1996.

---

Emil W. Kantra, II, for Appellants.

John O. Stover, Jr., for Appellee, Zoning Hearing Board of Upper Milford Township.

Marc S. Fisher, for Appellee, Upper Milford Township.

Before COLINS, President Judge,
SMITH, J., and KELTON, Senior Judge.

SMITH, Judge.

Willard R. and Kathleen Strunk (Owners) appeal from an order of the Court of Common Pleas of Lehigh County (trial court) that affirmed the decision of the Zoning Hearing Board (Board) of Upper Milford Township (Township) affirming the denial of Owners' request for a building/use permit to complete the addition of a fifth unit to an apartment building. Owners state the questions presented as (1) whether a subsequent sewage enforcement officer may render null and void a sewage system certification granted by a previous officer, when Owners have satisfied all conditions for approval and seek issuance of a building/use permit, and (2) whether the Board is equitably estopped from denying the permit based on assurances Owners received from officials that the sewage system certification was transferable.

Owners' predecessor in title, Charles Querry, sought a special exception to add a fifth unit to the apartment building. The sewage system for the building is a cesspool. By decision of October 21, 1991, the Board granted the special exception subject to conditions, including: "[T]he existing septic system must be checked for evidence of malfunction by the Township Sewage Enforcement Officer and recertified pursuant to the requirements of Section 510(C) of the Upper Milford Township Zoning Ordinance." Board's Decision, p. 11. As quoted by the Board, Section 510(C) provides: "Recertification of the adequacy of the sewage disposal systems, or demonstration of an adequate replacement systems [sic], shall be required prior to the expansion or conversion of any existing use."

ABE Inspection Services inspected the property and provided a report in September 1991 stating that the sewage disposal system on the property was currently in satisfactory working condition but expressly disclaiming any warranty or guarantee of proper functioning for any period in the future. A letter from the Township's Zoning Officer to Querry in November 1991 stated: "The certification of the existing septic system by ABE Services was reviewed and approved by Leslie Johnson, [Sewage Enforcement Officer]." Querry did not apply for a building/use permit; nevertheless, he commenced construction. The Township issued a stop work order against Querry when the construction of

the fifth unit was approximately 90 percent complete.

Before Owners purchased the property Willard Strunk spoke with the Township's Zoning Officer and Solicitor, both of whom indicated that approvals obtained by Querry were transferrable, although the Zoning Officer advised that Strunk speak with the current Sewage Enforcement Officer, Scott Bieber, regarding the sewage system certification. Owners did not speak with Bieber, and they purchased the property in May 1993.

■ Despite the stop work order and the lack of a building permit, Owners resumed construction. At the time of the hearing on the building/use permit application that they filed in June 1994, the unit was 98 percent complete. Owners assert that they incurred a total expense of $24,000, including services of an architect and other expenses necessary to secure official approval of their plans as complying with BOCA Code requirements. The Zoning Officer denied the application; the Board affirmed, and the trial court affirmed the Board. The scope of this Court's review where a trial court has not received additional evidence in a zoning appeal is to determine whether the Board committed an abuse of discretion or an error of law. *Rural Area Concerned Citizens, Inc. v. Fayette County Zoning Hearing Board*, 166 Pa. Cmwlth. 520, 646 A.2d 717 (1994), *appeal denied*, 540 Pa. 636, 658 A.2d 798 (1995).

I

■ The Court first addresses Owners' equitable estoppel argument; if the Board and Township are estopped from denying the building/use permit, there is no need to reach the merits. Owners cite *Cicchiello v. Bloomsburg Zoning Hearing Board*, 151 Pa. Cmwlth. 506, 617 A.2d 835 (1992), *appeal denied*, 537 Pa. 625, 641 A.2d 589 (1994), where this Court stated the elements for applying estoppel against a government agency. The elements are: (1) intentional or negligent misrepresentation of some material fact, (2) which was made with knowledge or reason to know that the other party would rely upon it, and (3) inducement of the other party to act to his or her detriment because of justifiable reliance upon the misrepresentation.

Owners note that they had in hand the documentation relating to the recertification by the previous Sewage Enforcement Officer and that they made inquiries to the Zoning Officer and the Solicitor. They were told that conditions previously satisfied would not be revisited. The record is clear that they did not talk to Bieber until after the purchase. Testimony indicated that the Township had in its records a 1992 letter from Bieber concerning his view of the inadequacy of the system, but that information was not conveyed to Owners. Therefore Owners relied upon representations by municipal officials, and the Township should be estopped.

The Board argues that the officials did not intentionally or negligently misrepresent any material fact. Also, they did not know or have reason to know that Owners would justifiably rely upon their statements. In particular, the Zoning Officer advised them to contact Bieber before the purchase in regard to the condition relating to recertification of the sewage system. Had they applied for a permit before making expenditures or caused their predecessor to secure a permit as a condition of the purchase, then either a permit would have been granted or they would have been alerted to the failure to satisfy that condition for the special exception. There was no innocent reliance. Further, Owners could not justifiably have relied upon any representations when they proceeded to perform further construction without a building permit, in violation of Section 802 of the Ordinance. To invoke the doctrine of equitable estoppel, Owners must also show "clean hands," which they have not done.

■ The Court agrees that the Zoning Officer's express suggestion that Strunk talk to the current Sewage Enforcement Officer before purchasing refutes Owners' assertion that the Zoning Officer had reason to know that Strunk would rely on what he represented. Further, the doctrine Owners seek to apply here is one of equity, as to which the requirement of clean hands always is an integral part. Owners cannot have the assistance of equity to secure a building permit

when they performed further construction without a permit in affirmative violation of the ordinance. This wrongdoing relates directly to the matter in controversy. *See Cameron Manor, Inc. v. Department of Public Welfare*, 681 A.2d 836 (Pa.Cmwlth.1996).

## II

Owners contend that the recertification secured from the previous Sewage Enforcement Officer fulfilled the condition imposed in the Board's 1991 grant of a special exception to their predecessor Querry and could not later be nullified. They assert that the condition concerned recertification to check for evidence of malfunction; therefore demonstration of an adequate replacement system is not relevant. The Board denied the permit solely because of the refusal of the current Sewage Enforcement Officer to approve recertification based on his belief that any cesspool sewage disposal system is by nature a malfunctioning sewage system.

■ Owners acknowledge Section 8(c) of the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. § 750.8(c),[1] which formerly provided in part:

> Sewage enforcement officers employed by local agencies in accordance with this act, in performing their duties as required under this act, may accept prior testing data and information obtained by a previous sewage enforcement officer, provided that the site and prior testing meets all of the following criteria and the sewage enforcement officer certifies the same to the local agency. . . .

They assert, however, that this provision relates to sewage enforcement officers' duties in regard to the issuing of original permits, not to a recertification such as is involved here. Further, they contend that discretion to accept or reject "prior testing data and information" does not encompass authority to render a previous certification null and void. They note the Board's statement that, had Querry applied for a building/use permit when he received certification, it would have

been granted, and his construction would have been legal, but that he and Owners lost the right to use that recertification by not satisfying the conditions necessary for a building/use permit in a timely manner.

Owners rely upon *Appeal of Barefoot*, 437 Pa. 323, 263 A.2d 321 (1970), where the Supreme Court held that a special exception, once granted, becomes a conforming use, and such use inures to the benefit of a subsequent owner; without some time limitation in the special exception itself or in the ordinance, there is none. They argue that the record contains no evidence of any change or of problems with the sewage system or the property and that Bieber's rejection was based solely on his difference of opinion with the former Sewage Enforcement Officer as to cesspools in general, which should not justify different treatment of Owners than what their predecessor received.

The Board, in response, notes that the 1991 inspection report addressed only the issue of whether the system was currently malfunctioning. It did not address the separate Section 510(C) requirement of showing "adequacy" of the system; therefore the condition of compliance with Section 510(C) was not previously fulfilled. Even if the 1991 report and letter indicating approval are viewed as constituting sufficient recertification of the sewage system at that time, the Board argues that Sections 802(A) and (C) of the Ordinance require the Zoning Officer to assure compliance with all ordinance provisions, statutes and conditions imposed by the Board before issuing a building permit. The Zoning Officer must perform this duty when the permit is sought.

■ When the current Sewage Enforcement Officer refused recertification, the Zoning Officer was required to deny the permit. Owners' interpretation of the discretion granted to a sewage enforcement officer under Section 8 of the Act is incorrect, because Section 8(c) expressly stated that it applied to such officers "in performing their duties as required under this act," i.e., in performing all of their duties, not just the issuance of

---

1. Section 8 was amended by Section 6 of the Act of December 14, 1994, P.L. 1250, effective in 365 days. The Section as amended is not applicable to Owners' 1994 application.

original sewage system permits. Sewage systems are regarded as extremely important matters in terms of public safety.[2] The requirement of recertification of Section 510(C) of the Ordinance cannot be satisfied "once and for all."

■ The Board argues further that *Appeal of Barefoot* does not apply here. The Board does not contend that the 1991 grant of a special exception subject to conditions has lapsed; rather, it asserts that the conditions must be satisfied at the time of application for a building permit. By waiting until 1994 to apply for a permit, Owners accepted the risk that the Sewage Enforcement Officer at the time of application might disagree with the former officer. The Township asserts that no certification ever existed; the formal certification would have been attested to on a building/use permit by the Sewage Enforcement Officer. It concedes, however, that had a permit been sought in 1991, the certification would have been granted, and construction could have proceeded lawfully, assuming all other conditions were met.

■ The Court rejects the assertion that a certification did not exist in 1991. The acknowledgement that a permit could have been secured at that time implies that attestation on a permit document would have been a mere formality. Nevertheless, the Court agrees with the ultimate conclusion of the Board and the Township that the certification did not achieve the same status as a permanent grant of a special exception.

■ The Court further agrees that the Zoning Officer may consider a permit application only in relation to circumstances at the time the application is made. Because both Owners and their predecessor delayed in filing an application for a building permit, the 1991 inspection report stating that the system was functioning properly then, and expressly not warranting proper functioning at any time in the future, could not establish that the system was functioning properly in 1994. Owners emphasize that the record here contains nothing to indicate that the sewage system was not functioning properly when they applied for the building/use permit. However, the question before the Zoning Officer and the Sewage Enforcement Officer in 1994 was whether they had been presented at that time with information satisfying the requirements of Section 510(C).

■ In addition, the Court agrees that the Sewage Enforcement Officer in office in 1994 acted within his discretion in making his own evaluation of the adequacy of the type of sewage disposal system on the property. Section 510(C) requires certification of "adequacy" as well as of proper functioning. As the trial court noted, that provision applied of its own force, apart from its inclusion as a condition of the special exception. Because Owners and their predecessor delayed nearly three years before seeking a building permit based upon the earlier certification, they took the risk that a later sewage enforcement officer might have a different view of the adequacy of the cesspool sewage disposal system when the application was finally made. Therefore, the order of the trial court is affirmed.

### ORDER

AND NOW, this 4th day of November, 1996, the order of the Court of Common Pleas of Lehigh County is affirmed.

---

2. An example is Section 7(b)(7) of the Act, 35 P.S. § 750.7(b)(7), which provides that if construction has not commenced within three years of the issuance of a permit for a community or individual sewer system, the permit shall expire and a new permit shall be required.