**CONNECTION TRAINING SERVICES, A Pennsylvania Non–Profit Corporation, Appellant**

v.

**CITY OF PHILADELPHIA;  Perritti DiVirgilio;  James Ferraro.**

No. 09–1856.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 16, 2009.

Filed:  Dec. 22, 2009.

David E. Jokelson, Esq., Neil E. Jokelson, Esq., Neil E. Jokelson & Associates, Philadelphia, PA, for Appellant.

Eleanor N. Ewing, Esq., City of Philadelphia Law Department, Abbe F. Fletman, Esq., Flaster Greenberg, Philadelphia, PA, Adam Gersh, Flaster Greenberg, Cherry Hill, NJ, for City of Philadelphia; Perritti DiVirgilio;  James Ferraro.

Before: FISHER, HARDIMAN, and VAN ANTWERPEN, Circuit Judges.

OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Plaintiff–Appellant Connection Training Services ("CTS") filed this appeal of an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment to defendants, the City of Philadelphia, Perritti DiVirgilio ("DiVirgilio"), and James Ferraro ("Ferraro") (collectively, the "Defendants").  CTS appeals the District Court's

conclusion that CTS failed to show a genuine issue of material fact that it suffered a detriment in relying on Defendants' misrepresentations as to the availability of a prevailing wage exemption pursuant to a city ordinance. The District Court relied on an estoppel argument in its grant for summary judgment. We will affirm the entry of summary judgment, but through alternative reasoning.

## I.

Because we write solely for the parties, we include only those facts necessary to our disposition of this appeal.

On September 28, 1999, the City of Philadelphia enacted ordinance number 990221–A (the "Ordinance"), which purported to expand the scope of workers exempt from the prevailing wage requirements for city contract work. The Ordinance would not become effective until the Minority Business Enterprise Council ("MBEC") provided certain certifications to the Mayor's Office and the City Council. MBEC never provided those certifications and, therefore, the Ordinance never took effect.

Nevertheless, CTS developed a training program and sought certification as a *bona fide* training program under the Ordinance.[1] After receiving approval and discretionary funding from the Philadelphia Workforce Development Corporation ("PWDC"), CTS sought to place its trainees with LP Group2, Inc. ("LP2"). LP2 attempted to use these trainees on a contract with the city, but received citations from Philadelphia's Labor Standards Unit ("LSU") for prevailing wage violations. DiVirgilio and Ferraro are the director

and deputy director, respectively, of the LSU, which is responsible for ensuring that, *inter alia,* workers on city contracts receive the prevailing wages.

Prior to the Ordinance, the only exemption from the prevailing wage requirements was for recognized apprenticeship programs. The Ordinance would have extended those exemptions to *bona fide* training programs that complied with the requirements of the Ordinance. The LSU refused to recognize an exemption for CTS's training program on the basis that the only available exemption was for apprenticeship programs. During the course of this litigation, Defendants asserted that CTS's claimed exemption was unenforceable because the Ordinance never took effect. Nevertheless, the LSU enforced other requirements under the Ordinance which similarly did not take effect without the MBEC's certification.

CTS argues that Defendants' refusal to recognize its training programs precludes it from placing its trainees with construction firms working on city projects, thereby violating its due process and equal protection rights, as well as violating Pennsylvania's Public Official and Employee Ethics Act ("POEEA"), 65 Pa. Cons.Stat. Ann. § 1101–1113. Because these firms would have to pay the prevailing wage unless CTS's training program is exempt, the firms will not hire and pay unskilled workers at the same rate as skilled workers. CTS's argument continues that if it cannot place its trainees, then it cannot receive additional funding from the city or city-related agencies, such as PWDC. Although CTS provided evidence of PWDC's criteria for refunding

1. The certification requirement was included in a footnote. The director and program manager of CTS, Garnett Littlepage ("Littlepage"), asserted that he pursued the training program after reviewing an online version of the Ordinance which contained no footnotes.

Thus, the District Court concluded, for the purposes of summary judgment review, that Littlepage was unaware of the certification requirement at the time CTS initiated its training program.

a training program, there is no indication CTS was guaranteed refunding if it met those criteria. Further, CTS argues that it incurred long-term expenses in creating and initiating its training programs, which it cannot recover if Defendants are permitted to refuse to exempt its training program.

On December 31, 2008, 2008 WL 5423479, the District Court granted Defendants' motion for summary judgment as to CTS's due process and equal protection claims under 42 U.S.C. § 1983. The court determined that because the Ordinance never went into effect, CTS could only succeed on its claims if it could estop the Defendants from denying that the Ordinance took effect.[2] The court concluded that "the record does not show that CTS sought wage exemptions in reliance on [D]efendants' negligent misrepresentations ... or that such reliance would have been justified." *J.A.* at 1891. Thus, CTS could not estop Defendants from claiming the Ordinance was not in effect and, therefore, failed to identify a protected property right.

CTS subsequently filed a timely motion for reconsideration, which the District Court denied in a February 25, 2009 order.

Although the court assumed that CTS could show it justifiably relied on Defendants' misrepresentations, it concluded that "CTS has not produced evidence that its reliance caused it detriment." *Id.* at 1898–99. The court then denied a second motion for reconsideration as improper and declined to exercise supplemental jurisdiction over CTS's POEEA claim.

## II.

The District Court had jurisdiction for CTS's § 1983 claims under 28 U.S.C. § 1331. The District Court declined to exercise supplemental jurisdiction for CTS's state-law claim under § 1367. This Court has jurisdiction to review the grant of summary judgment under § 1291. *Dee v. Borough of Dunmore*, 549 F.3d 225, 227 (3d Cir.2008). Plaintiff filed a timely notice of appeal.[3]

The appeal from the denial of a motion for reconsideration brings up the underlying judgment for review; therefore, the standard of review depends on the nature of the underlying judgment. *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552–53 (3d Cir.1992). Because the underlying judgment granted Defendants' motion for summary judgment, this Court exercises ple-

---

**2.** The District Court asserted that "[t]o estop a government agency, a plaintiff must establish: (1) that the agency intentionally or negligently misrepresented some material fact; (2) the agency had knowledge or reason to know that the other party would rely upon it; and (3) the agency induced the other party to act to its detriment because of justifiable reliance upon the misrepresentation." *J.A.* at 1890 (citing *Strunk v. Zoning Hearing Bd. of Upper Milford Twp.*, 684 A.2d 682, 685 (Pa. Commw.Ct.1996)).

**3.** The notice of appeal in a civil action must be filed within thirty days after the entry of the judgment appealed. Fed. R.App. P. 4(a)(1)(A). If, however, the party files a motion to alter or amend the judgment within the time permitted under the Federal Rules of

Civil Procedure, the time for filing the notice of appeal runs from the entry of the order disposing of such motion. *Id.* R. 4(a)(4)(A)(iv). A motion to reconsider is considered a motion to alter or amend the judgment. *Carrascosa v. McGuire*, 520 F.3d 249, 253 n. 3 (3d Cir.2008) (citing *United States v. McGlory*, 202 F.3d 664, 668 (3d Cir.2000) (en banc)). The motion to reconsider must be filed within 10 days of the subject judgment. Fed.R.Civ.P. 59(e). CTS filed a timely motion to reconsider the District Court's December 31, 2008 order granting Defendants' request for summary judgment. The District Court disposed of CTS's motion on February 25, 2009, and CTS filed its notice of appeal within thirty days of that order. Therefore, CTS filed a timely appeal. *See* Fed. R.App. P. 4(a)(1)(A).

nary review, applying the same standards the District Court was required to apply. *Bowers v. NCAA*, 475 F.3d 524, 535 (3d Cir.2007).

Summary judgment is appropriate if the moving party has established that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)). The moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case. *Id.* at 322–23, 106 S.Ct. 2548. The reviewing court must take all facts in the light most favorable to and must draw all reasonable inferences in favor of the non-movant. *Bowers*, 475 F.3d at 535.

If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### III.

On appeal, CTS argues that the District Court erred in concluding that it failed to adduce evidence of its detrimental reliance which was sufficient to survive Defendants' motion for summary judgment. Although CTS indicated in its notice of appeal that it was appealing each of the District Court's orders, CTS argues against only the District Court's denial of CTS's first motion for reconsideration. More specifically, CTS argues the District Court erred in granting summary judgment against CTS's due process claims. Therefore, CTS has waived any other arguments it may have had on this appeal. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir.1994) (considering party's failure to raise issue in its opening brief as waiver of that argument on appeal); *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir.1993) (requiring party to identify issue in statement of issues or in argument section of brief to avoid waiver). Accordingly, we will not address the District Court's entry of summary judgment on CTS's equal protection claim or the court's decision not to exercise supplemental jurisdiction over CTS's state-law claim. Rather, we will focus on the District Court's entry of summary judgment as to CTS's due process claims.[4]

---

4. It is unclear from the record and from CTS's brief whether it is asserting a procedural or substantive due process claim. Despite passing references to substantive due process in CTS's brief opposing Defendants' motion for summary judgment, the District Court indicated it considered both types of due process claims. Nonetheless, CTS's brief does not indicate either procedural or substantive due process. *See Appellant's Br.* at 2, 38–48. And although Defendants maintain that CTS appeals its substantive due process claim, *Appellees' Br.* at 16, Defendants assert a procedural due process argument in their brief, *id.* at 34–35 (citing *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (evaluating constitutionality of process under Fifth Amendment Due Process Clause)). Because our ultimate conclusion does not depend on whether we consider CTS's claim as procedural or substantive, we will address both.

The Fourteenth Amendment prohibits state action which "deprive[s] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Congress enacted § 1983 as a federal cause of action against the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States. *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 755, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). To state a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived plaintiff of a right secured by the Constitution or laws of the United States. *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir.2008). We will assume, because the parties do not dispute, that for the purposes of this appeal the Defendants are state actors subject to § 1983.

The Due Process Clause includes protections for both procedural and substantive due process. *See, e.g., Gonzales,* 545 U.S. at 755–56, 125 S.Ct. 2796 (acknowledging substantive and procedural components of Due Process Clause). Because it is unclear whether CTS is asserting a procedural or substantive due process claim, we will address each in turn. The first step in evaluating a § 1983 claim, however, is to identify the exact contours of the underlying right CTS claims was violated and to determine whether CTS has alleged a deprivation of a constitutional right at all. *Chainey,* 523 F.3d at 219.

### A.

To establish a substantive due process claim under § 1983, the plaintiff must prove (1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience. *Id.*; *see Gottlieb v. Laurel Highlands Sch. Dist.,* 272 F.3d 168, 172 (3d Cir.2001) (stating that substantive due process is violated when state conduct is arbitrary, or conscience shocking, in a constitutional sense) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). The plaintiff must have been deprived of a fundamental property interest under the Constitution. *Chainey,* 523 F.3d at 219. If the right is fundamental, we must then consider whether the conduct was arbitrary or irrational; however, if the right is not fundamental, there is no substantive due process issue and the state conduct will be upheld so long as the state complies with procedural due process. *See Nicholas v. Pa. State Univ.,* 227 F.3d 133, 142 (3d Cir.2000).

This Court has recognized two strands of substantive due process correlating to the nature of the government action, i.e. whether it was legislative or non-legislative. *Id.* at 139. Non-legislative, or executive, actions "typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society." *Id.* at 139 n. 1. In this case, CTS argues that Defendants' refusal to qualify its training program for the wage exemption violated its due process rights; therefore, CTS argues it was deprived by non-legislative action.

To prevail on a non-legislative substantive due process claim, CTS must establish a protected property interest to which the Fourteenth Amendment's protection applies. *Id.* at 139–40. This Court has required plaintiffs in such circumstances to identify a "particular quality of property interest." *Id.* at 140. Whether a certain property interest embodies this particular quality is not determined by reference to state law, but depends on whether that interest is "fundamental" under the Constitution. *Id.* The asserted property interest must be considered against the background of

constitutional purposes, rationally developed and historically perceived, with respect for the teachings of history and a solid recognition of the basic values that underlie our society. *Id.* (quoting *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229–30, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)).

We focus on the nature of the property interest at stake and, so far, have limited non-legislative substantive due process rights to real property ownership. *Id.* at 141. Further, we have declined to recognize a fundamental property interest in a variety of other circumstances. *See, e.g., Gikas v. Wash. Sch. Dist.,* 328 F.3d 731, 736–37 (3d Cir.2003) (holding there is no property interest in statutory veterans' employment preference for substantive due process purposes); *Nicholas,* 227 F.3d at 143 (declining to find interest in tenured employment); *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1178, 1179–80 (3d Cir.1997) (concluding lowest bidder has no fundamental property interest in municipal contracts even though state statute requires municipality to award contract to lowest bidder); *Reich v. Beharry,* 883 F.2d 239, 244–45 (3d Cir.1989) (finding no interest in prompt payment for professional services); *Ransom v. Marrazzo,* 848 F.2d 398, 411–12 (3d Cir.1988) (asserting that state-law entitlement to water and sewer services is not a protected property interest); *Mauriello v. Univ. of Med. & Dentistry of N.J.,* 781 F.2d 46, 52 (3d Cir.1986) (dicta) (suggesting graduate student has no property interest in continued enrollment in program).

In this case, CTS asserts property interests in recognition of its training program under the Ordinance so that it can (1) continue to place its trainees, which CTS asserts is necessary to receive future, discretionary funding from the City of Philadelphia or city-related agencies, and (2) recover the long-term fixed costs it expended in creating its training program. Such interests are not "fundamental" under the Constitution, nor are they basic values that underlie our society. CTS's asserted interests are analogous to the numerous interests we have declined to recognize, which rely on statutory rights or relationships with government agencies, and are not similar to the "venerable common-law rights of real property ownership." *See Nicholas,* 227 F.3d at 143. Therefore, CTS has failed to identify an interest protected by substantive due process and we need not consider whether Defendants' conduct shocks the conscience. *See Chainey,* 523 F.3d at 219 (requiring deprivation of fundamental property interest). Accordingly, Defendants' conduct will be upheld so long as it complied with procedural due process. *See Nicholas,* 227 F.3d at 142.

## B.

To establish a procedural due process claim under § 1983, the plaintiff must prove (1) a deprivation of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty, or property, and (2) that the procedures available did not provide due process of law. *Hill v. Borough of Kutztown,* 455 F.3d 225, 233–34 (3d Cir.2006). Procedural due process does not protect every benefit; rather, to have a property interest in a benefit, a person must clearly have more than an abstract need or desire and more than a unilateral expectation of receiving the benefit. *Gonzales,* 545 U.S. at 756, 125 S.Ct. 2796. Thus, in constitutional parlance, the plaintiff must have a legitimate claim of an "entitlement." *Id.* Entitlements, however, are not established by the Constitution; rather, they are created and defined by existing rules or understand-

ings that stem from an independent source, such as state law. *Id.*

It is undisputed that the Ordinance never took effect and, therefore, CTS is not entitled to the prevailing wage exemption under statute. Thus, CTS must be able to estop Defendants from denying the Ordinance took effect. Under Pennsylvania law, a party asserting estoppel against a government agency must show (1) a negligent misrepresentation, which (2) induced justifiable reliance and (3) caused the party to suffer a detriment. *See Strunk v. Zoning Hearing Bd. of Upper Milford Twp.,* 684 A.2d 682, 685 (Pa. Commw.Ct.1996). A party asserting estoppel must offer clear, precise, and unequivocal evidence in support of its claim and must produce more than mere speculation. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502, 504 (1983).

Even assuming CTS can show negligent misrepresentation and justifiable reliance, it cannot show Defendants' misrepresentations caused it detriment. CTS asserts it suffered detriment because, unless recognized under the prevailing wage exemption, it will not (1) receive future discretionary funding, or (2) recoup its long-term expenses in creating its training program. CTS's claim for recoupment is just a variation of its claim that it will not receive future funding—CTS would recoup its expenses from that funding. Further, because the funding is discretionary, it is too speculative to meet CTS's burden to show a detriment. *See Novelty Knitting Mills,* 457 A.2d at 504. Absent a cognizable detriment, CTS cannot estop Defendants from denying the Ordinance took effect.

Consequently, CTS cannot claim an entitlement under state law. Therefore, CTS is not entitled to procedural due process protection.

IV.

We conclude that CTS has not asserted a cognizable property interest under either procedural or substantive due process. Consequently, as a matter of law, CTS cannot maintain claims under § 1983 for violation of its due process rights. Therefore, we will affirm the District Court's entry of summary judgment for Defendants.